## CORCORAN v. ROYAL DEVELOPMENT CO.

### No. 300.

Circuit Court of Appeals, Second Circuit.

July 26, 1941.

David M. Palley, of New York City, for appellant.

Eugene J. Dwyer and Dwyer, Reilly, Roberts, McLouth & Dicker, all of Rochester, N. Y., for appellee.

Before L. HAND, CHASE, and CLARK, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal from a judgment dismissing a complaint for lack of jurisdiction appearing upon its face. The jurisdiction of the district court depended upon diversity of citizenship and upon the amount in controversy; the first is conceded so that the second is the only issue. Article Third of the complaint alleges generally that the "matter in controversy" does exceed $3,000, but the defendant argues that it appears from the particular allegations which appear later in the complaint that this is untrue; and it is therefore necessary to state the substance of these. The defendant is a Montana corporation doing all its business in New York. It owned mines in the State of Washington, and, presumably to get money to develop them, on May 22, 1917, secured $50,000 by means of 100 "certificates" of $500 each, representing "participations" in a contract between it and one, Lonergan, in which it promised Lonergan to pay a royalty of "six cents a unit on all copper produced" by it until the $50,000 were paid, and thereafter "the further sum of three cents a unit". (A "unit" was twenty pounds of copper.) Later it secured an additional $250,000 by the issue of similar "participation certificates" in a second contract between itself and Lonergan, agreeing to pay the "sum of three cents a unit on all copper produced". These "certificates" the complaint calls the "First" and "Second Royalty Certificates". Finally, on May 15, 1922, the defendant's shareholders authorized it to issue 10,000 "Participating Contracts" of the par value of $200 each, by which it agreed to set aside "20¢ a dry ton on all ores produced * * * the proceeds of which shall be divided pro rata among the registered owners of the 10,000 participating contracts * * * and this Certificate shall be a charge only against the said special fund and not on the property or other assets of the Company." Between May 15, 1922, and January 1, 1940, the defendant sold more than 4,000 of these "Participating Contracts," and agreed with each of their holders to develop its mines, "extract therefrom in large and paying quantities, and have treated and sold the minerals and ores therein contained." On December 4, 1939, the defendant's board of directors voted to abandon the business, dissolve the company, and distribute the assets, and this the shareholders ratified on January 4, 1940 (or on August 6, 1940, which of the two does not definitely appear). The complaint alleged as a default upon the "First" and "Second Royalty Certificates" and on the "Participating Contracts," that the company had neglected to operate its mines in accordance with the agreements. It also alleged that if the holders of these three issues were "creditors," the company was insolvent, but that the company denied that they were creditors and asserted that its shareholders were entitled to the assets which it proposed to distribute among them. The plaintiff is the owner of seven two hundred dollar "Participating Contracts" ($1,400). He prays the following relief: that the holders of all three series be declared creditors entitled to be paid in priority to the shareholders; that certain provisions in the defendant's charter and in the certificates of shares be declared void; and "that the distribution of the proceeds realized from the sale of the corporate assets be enjoined until the determination of the issues raised in this court, and that then they be distributed in accordance with the judgment to be entered in this court." The district judge decided that the amount in controversy was the par value of the plaintiff's "seven participating contracts" [35 F.Supp. 400, 401]; and, as this was not enough to give the court jurisdiction, he dismissed the complaint.

The parties and the judge speak of this as an action for a "declaratory judgment" under § 400 of Title 28, U.S.C.A. and it is true that § 400(1) includes cases where some immediate relief is asked in addition to a "declaration" of rights. The purpose of this is apparent; there may be situations in which a plaintiff needs immediate relief, but also needs an adjudication of rights other than those on

which the immediate relief is dependent. In such situations the action has two aspects: in part it is an ordinary action; in part it is an action for a "declaratory judgment." But it is absurd to speak of a judgment as "declaratory" in so far as it "declares" no more than is necessary to sustain the immediate relief prayed, for in that sense every action is for a "declaratory judgment." A court cannot grant any relief whatever except as it finds, and by finding "declares," that the plaintiff has those rights on which the remedy must be based. In the case at bar the complaint asks the "declaration" of no rights that would not have to be adjudicated before there could be a distribution of the defendant's assets; and, stripped of its verbiage, the complaint is nothing more than a simple creditor's action, asking the distribution of a corporation's assets in equity. We do not mean to imply that the jurisdiction of the district court would be determined by a different rule if it had been for a "declaratory judgment," but the authorities are more literally in point if we treat it as what it really is.

In such an action there can be no question since Lion Bonding & Surety Company v. Karatz, 262 U.S. 77, 85, 86, 43 S.Ct. 480, 483, 67 L.Ed. 871, that the amount due upon the plaintiff's debt is the "amount in controversy." The Supreme Court has never indicated any disposition to recede from that ruling, and in either the same, or substantially the same, situation three circuit courts of appeal have followed it. Robbins v. Western Automobile Ins. Co., 7 Cir., 4 F.2d 249; Pianta v. H. M. Reich Co., Inc., 2 Cir., 77 F.2d 888, 890; Frank & Lambert, Inc. v. Rosengren, 8 Cir., 97 F.2d 460. It was perhaps possible as a new question to take the view that the amount of property to be distributed was the test, as indeed some judges did (Towle v. American B. L. & I. Society, C.C., 60 F. 131; Jones v. Mutual Fidelity Co., C.C., 123 F. 506; United States Radiator Corp. v. Doody, D.C., 5 F. Supp. 471) but the law is now too well settled to admit of any debate. Such an action is to be distinguished from one in which the plaintiff sues upon a single right of which he is only a part owner along with others on behalf of whom the action is also brought. A common instance of this is a shareholder suing in the right of the corporation, where the corporation's right is the "amount in controversy." Hill v. Glasgow R. Co., C.C., 41 F. 610; Larabee v. Dolley, C.C., 175 F. 365, 378; Hutchinson Box Board & Paper Co. v. Van Horn, 8 Cir., 299 F. 424, 428; Johnson v. Ingersoll, 7 Cir., 63 F.2d 86. The same principle applies to beneficiaries suing in the right of a trustee. Marion Mortgage Co. v. Edmunds, 5 Cir., 64 F.2d 248. Handley v. Stutz, 137 U.S. 366, 11 S.Ct. 117, 34 L.Ed. 706, merely decided that when some of the plaintiffs who sue jointly, have claims above the jurisdictional amount, the court has jurisdiction to pass upon the claims of others which, taken alone, would be too small. The doctrine, invoked by the plaintiff that jurisdiction in such cases depends upon the value of the assets to be administered, is certainly not the law today, whether or not it ever was.

Judgment affirmed.