**SIGNAL–STAT CORPORATION,**
Plaintiff-Respondent,

v.

**LOCAL 475, UNITED ELECTRICAL, RADIO AND MACHINE WORKERS OF AMERICA (UE),** Defendant-Appellant.

No. 34, Docket 24039.

United States Court of Appeals
Second Circuit.

Argued May 9, 1956.

Decided July 2, 1956.

Mildred Roth, New York City, for defendant-appellant.

Zelby & Burstein, New York City, Herbert Burstein, New York City, of counsel, for plaintiff-respondent.

Before CLARK, Chief Judge, and FRANK and HINCKS, Circuit Judges.

FRANK, Circuit Judge.

1. An initial question is whether the district court has jurisdiction over the plaintiff's action for damages under Section 301(a) of the Taft-Hartley Act, 29 U.S.C.A. § 185(a). This is not the type of action, involving the "uniquely personal right of an employee", which, according to Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 348 U.S. 437, 75 S. Ct. 489, 501, 99 L.Ed. 510, was not intended by Congress to be brought under Section 301. The Court in Westinghouse did not, therefore, reach or decide the constitutional-jurisdictional question raised by Section 301. Hence, we adhere to our decision in Shirley-Herman Co. v. International Hod Carriers, Bldg. & Common Laborers Union, 2 Cir., 182 F.2d 806, where we held that Section 301 created a federal substantive right and federal jurisdiction to enforce it. See also, Rock Drilling, Blasting, etc., v. Mason & Hanger Co., 2 Cir., 217 F.2d 687, 691. Other courts, since Westinghouse, have reached a similar result. See Lincoln Mills of Alabama v. Textile Workers Union, 5 Cir., 230 F.2d 81, 87–88; Local 205, United Electrical, Radio and Machine Workers v. General Electric Company, 1 Cir., 233 F.2d 85.

2. The order of the district court is appealable. Shanferoke Coal & Supply Corp. v. Westchester Service

Corp., 293 U.S. 449, 55 S.Ct. 313, 79 L.Ed. 583. The fact that, here, the action "at law" for damages is to enforce a statutory rather than a common law right is immaterial. Wilko v. Swan, 2 Cir., 201 F.2d 439, 441, reversed on other grounds 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168; Markel Electric Products, Inc., v. United Electric, Radio & Machine Workers, 2 Cir., 202 F.2d 435, 437; Cf. Baltimore Contractors, Inc., v. Bodinger, 348 U.S. 176, 179–180, 75 S.Ct. 249, 99 L.Ed. 233.

■ 3. We think the broad arbitration clause in the collective bargaining agreement here involved covers a dispute relating to an alleged breach of the no-strike clause. Under the agreement, "*All* disputes, grievances or differences" are arbitrable. We can hardly imagine more broadly inclusive language. This phraseology distinguishes the instant case from Markel Electric Products, Inc., v. United Electric, Radio & Machine Workers, supra. To the extent that the other cases cited by plaintiff require a contrary result, we think them erroneous.[3] We think their interpretations of similar arbitration clauses are unduly restrictive and achieve, by indirection, the same result as the old, and now generally rejected, judicial aversion to enforcing arbitration agreements. Cf. Kulukundis Shipping Co. v. Amtorg Trading Corp., 2 Cir., 126 F.2d 978, 983–985. Other cases, with which we agree, support our decision that the instant arbitration agreement covers a dispute arising from an alleged breach of the no-strike clause. See, e. g., Lewittes & Sons v. United Furniture Workers of America,

CIO, D.C.S.D.N.Y., 95 F.Supp. 851, 853–854; Pennsylvania Greyhound Lines v. Amalgamated Ass'n, etc., D.C., 98 F. Supp. 789, 791, reversed on other grounds, 3 Cir., 193 F.2d 327; Hudson Wholesale Grocery Co. v. Allied Trades Council, N.J.Ch., 3 N.J.Super. 327, 65 A.2d 557, 559.

The plaintiff itself apparently construed the grievance-arbitration provision to include this dispute, since it instituted a grievance pursuant to the provisions of Paragraph 18 of the agreement with respect to "the matter of the quitting of employment by the members of the union, with the knowledge, consent and direction of the union."

■ 4. There remains the question whether the Union is entitled to a stay of the action pending arbitration under Section 3 of the United States Arbitration Act or under Section 301 of the Taft-Hartley Act. Since we decide that Section 3 of the Arbitration Act is applicable to this agreement and authorizes a stay of the proceedings, we do not reach, and need not decide, whether the arbitration agreement is enforceable under Section 301 of the Taft-Hartley Act, as some courts have held.[4]

■■ The Supreme Court, in strong dictum, has recently stated that Section 3 of the Arbitration Act is limited by Sections 1 and 2; Bernhardt v. Polygraphic Co., 350 U.S. 198, 201–202, 76 S.Ct. 273. We think the collective bargaining agreement in this case is a "contract evidencing a transaction involving commerce" within the meaning of Section 2 of the Act.[5] We also think that the last clause

---

**3.** United Electric, Radio & Machine Workers v. Miller Metal Products, 4 Cir., 215 F.2d 221; International Union United Furniture Workers v. Colonial Hardwood Flooring Co., 4 Cir., 168 F.2d 33, 35; Square D Co. v. United Electric, Radio & Machine Workers, D.C., 123 F.Supp. 776.

**4.** See, e. g., Textile Workers Union v. American Thread Co., D.C.D.Mass., 113 F.Supp. 137; Wilson Bros. v. Textile Workers Union, D.C.S.D.N.Y., 132 F. Supp. 163, 165; The Evening Star News-

paper Co. v. Columbia Typographical Union, D.C.D.C., 124 F.Supp. 322, 323; Local 207, etc., v. Landers, Frary & Clark, D.C.Conn., 119 F.Supp. 877, 879. Contra, Lincoln Mills of Alabama v. Textile Workers Union, 5 Cir., 230 F.2d 81, 87–88; Local 205, United Electrical, Radio and Machine Workers v. General Electric Company, 1 Cir., 233 F.2d 85.

**5.** See Bernhardt v. Polygraphic Co., 350 U.S. 198, 200–201, 76 S.Ct. 273; Local 205, United Electrical, Radio and Machine Workers v. General Electric Company, 1

in Section 1 of the Act, which excludes certain contracts from the Act, is not applicable to this agreement. That clause provides that "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."

The Supreme Court has not yet interpreted the exclusionary clause in Section 1, and the decisions of the lower federal courts are in irreconcilable conflict. The decisions of the various circuits are discussed and reviewed in Lincoln Mills of Alabama v. Textile Workers Union, 5 Cir., 230 F.2d 81, 85–86 and in Local 205, United Electrical, Radio and Machine Workers v. General Electric Company, 1 Cir., 233 F.2d 85. We will not repeat their labor here. Suffice it to say that the Fourth, Fifth and perhaps the Tenth Circuits would hold that the instant agreement comes within the exclusionary clause in Section 1 and, hence, that the Arbitration Act is inapplicable. The First, Third and Sixth Circuits would hold that the agreement does not come within the exclusionary language of Section 1, and that therefore Section 3 of the Act, authorizing a stay of the action, is applicable. Those cases which so hold do so either on the ground that a collective bargaining agreement is not a "contract of employment," within the meaning of that language in Section 1,[6] or— as the Third Circuit has held in Tenney Engineering, Inc., v. United Electric, Radio & Machine Workers, 207 F.2d 450, 452–453—because, even assuming a collective bargaining agreement is a "contract of employment"—the exclusionary clause in Section 1 applies only to "workers engaged in * * * interstate commerce", i. e., only those actually in the transportation industries.

The legislative history of the exclusionary clause in Section 1 is, at best, vague and inconclusive. The language apparently was inserted at the request of the Seamen's Union, which felt that disputes involving the contracts of seamen came within the admiralty jurisdiction and should not be subject to arbitration. It is likely that the Union was concerned, at least in part, with its own collective bargaining agreements. Thus, to hold that such agreements are not "contracts of employment", and hence not within the exclusionary language in Section 1, would tend to defeat what little congressional intent can be discerned concerning that language. We incline to agree with the decision and reasoning of the third Circuit in the Tenney case. This conclusion is consonant with our decisions. Although this court has never passed on the precise issue here involved, we did, in Shirley-Herman Co. v. International Hod Carriers, Bldg. & Common Laborers Union, 2 Cir., 182 F.2d 806, 809, impliedly hold that a collective bargaining agreement constituted a "contract of employment"; and in Bernhardt v. Polygraphic Co. of America, 2 Cir., 218 F.2d 948, 951– 952, reversed on other grounds 350 U.S. 198, 76 S.Ct. 273, we gave a restrictive interpretation to the term, "workers" as used in the exclusionary clause in Section 1.

In view of the present, almost universal, approval of arbitration as a means for settling labor disputes,[7] in-

Cir., 233 F.2d 85; Sturges & Murphy, Some Confusing Matters Relating to Arbitration Under the United States Arbitration Act, 17 Law and Contem. Probs. 580, 617–19 (1952); Cox, Grievance Arbitration in the Federal Courts, 67 Harv.L.Rev. 591, 598–599 (1954).

6. The cases which so hold rely primarily on language in J. I. Case Co. v. N. L. R. B., 321 U.S. 332, 334–336, 64 S.Ct. 576, 88 L.Ed. 762, a case not involving an interpretation of the Arbitration Act at all.

7. United Office and Professional Workers of America CIO v. Monumental Life Ins. Co., D.C.E.D.Pa., 88 F.Supp. 602, 607; Markel Electric Products, Inc., v. United Electric, Radio & Machine Workers, 2 Cir., 202 F.2d 435, 438 (dissenting opinion by Judge Clark); Cox, Some Aspects of the Labor Management Relations Act, 1947, 61 Harv.L.Rev. 274, 305 (1948); Gregory, The Collective Bargaining Agreement; Its Nature and Scope, 1 Labor L.J. 451, 456 (1950); Kaye and Allen, Union Responsibility and

cluding the express approval of Congress,[8] we think the courts should interpret the United States Arbitration Act so as to further, rather than impede, arbitration in this area. We think the interpretation of the Third Circuit in Tenney accords both with the modern trend and with what we deem to be the intention of Congress.

The plaintiff's employees are not "engaged in * * * commerce," that is, they are not actually engaged in interstate and foreign commerce. They are merely engaged in the manufacture of goods for interstate commerce. Therefore, the collective bargaining agreement here does not come within the exclusionary clause of Section 1.

The decision of the district court is reversed and the cause is remanded for proceedings in conformity with this opinion.

Enforcement of Collective Bargaining Agreements, 30 Boston U.L.Rev. 1, 22–30 (1950); Warren and Bernstein, A Profile of Labor Arbitration, 4 Indus. and Labor Rel.Rev. 200, 202 (1950).

8. Labor Management Relations Act of 1947, Sections 201(c) and 203(d), 29 U.S.C.A. §§ 171(c), 173(d).