**COUNCIL OF WESTERN ELECTRIC TECHNICAL EMPLOYEES—NATIONAL, Plaintiff-Appellee,**

v.

**WESTERN ELECTRIC COMPANY, Incorporated, Defendant-Appellant.**

**No. 24, Docket 24004.**

United States Court of Appeals Second Circuit.

Argued Oct. 5, 1956.

Decided Nov. 30, 1956.

Eugene Eisenmann and Proskauer Rose Goetz & Mendelsohn, New York City, for defendant-appellant, Robert A. Levitt, Burton A. Zorn, Richard N. Goldstein, New York City, of counsel.

Abraham Weiner, New York City, and Mayer, Weiner & Mayer, New York City, for plaintiff-appellee, Henry Mayer, New York City, of counsel.

Before HAND, MEDINA and HINCKS, Circuit Judges.

HAND, Circuit Judge.

The defendant appeals from an order, denying its motion for a stay under § 3 of the United States Arbitration Act, 9 U.S.C.A. § 3, and § 1451 of the New York Civil Practice Act. The action was brought under § 301(a) of the Labor Management Relations Act, 29 U.S. C.A. § 185(a), for a declaratory judgment; and the complaint was in substance as follows. The plaintiff is a "labor organization, certified" under that act, and the defendant is a New York corporation, "engaged in an industry affecting commerce": i. e. interstate commerce. The parties had entered into a contract by virtue of which the plaintiff became "the exclusive representative of all non-supervisory technical-professional employees" of the defendant, as defined in Article 26 of the contract. As to these the defendant had agreed that in "the selection of individuals to be hired or transferred into such occupational classifications the Company will use its judgment in determining on an individual basis the qualifications for the job to be filled; in the exercise of such judgment, the Company shall give consideration to Section 2(12) of the Labor Management Relations Act [29 U.S.C.A. § 152(12)]" Moreover, "the Company will not reduce the minimum qualifications for the occupational classifications involved below those used for the employees in the unit at the time of certification." In short, it would not hire any employees who were not qualified "for the jobs involved through previous experience and/or education." The defendant had, however, "hired and

transferred * * * employees who did not and do not meet professional qualifications as defined in Section 2(12), * * * whose qualifications were and are * * * below the minimum qualifications * * * used * * * at the time of the * * * certification, and who were and are non-professional." The defendant had denied that it had broken its promise in any of these regards, and asserted that its judgment is final as to the qualifications of employees and that it is not bound to adhere to the minimum qualifications used at "certification." The plaintiff had demanded that the defendant "submit said controversy to arbitration," but the defendant had refused, and its refusal had discouraged the plaintiff's members "from continuing to remain members of a labor organization representing a collective bargaining unit" like the plaintiff. The plaintiff did not seek either enforcement of the contract, or damages "on behalf of any individual employees," but it did ask damages that it had "suffered and will suffer as an organization in the sum of $200,000." On these allegations the plaintiff prayed five-fold relief. First, (a), a declaratory judgment that the contract forbad the defendant from hiring employees who had not the qualifications of § 2(12) of the Labor Management Act. Second, (b), a similar judgment that the contract forbad the defendant from "reducing the minimum qualifications" for employees below those in effect at the time of "certification." Third, damages; fourth, costs; fifth, such further relief as was "just and equitable."

The complaint was filed on October 4, 1955, and the defendant was served on the 10th. On the 27th the defendant moved to dismiss the first prayer because the complaint failed to state an adequate claim; the second prayer, because no case or controversy was involved; the third, because the plaintiff's refusal to arbitrate as provided in the contract was a bar, or, as an alternative, that it entitled the defendant to a stay; and finally, a prayer to dismiss the complaint because the court had no jurisdiction over the claim. On September 14 the plaintiff had already given notice that the contract would end on November 29 by virtue of a privilege reserved that, although it was to continue indefinitely from year to year, either party might end it on sixty days notice. On December 30 Judge Sugarman held that, since the plaintiff by this notice had put an end to the contract, it was no longer possible to grant any declaratory relief, and that all that was left was the prayer for damages, and although this would require the court to "construe the contract," he would deny any stay.

■ The first question, although the parties have not raised it, is whether we have any jurisdiction over the appeal. Amid the existing confusion of decisions it is hard to proceed with assurance; but we take it as now settled that the grant, or denial, of a stay in an action that would have been a suit in equity before the fusion of law and equity is now not appealable under § 1292(1) of Title 28;[1] but, if the order is in an action that would have been an action at law before that time, it is appealable.[2] The complaint at bar, being for a declaratory judgment under § 301(a) of the Labor Management Relations Act, § 185, Title 29 U.S.C.A., is analogous to the old bill in equity, *quia timet;*[3] and our jurisdiction therefore seems to depend upon whether such an action is to be regarded as an action at law. Courts

---

1. City of Morgantown v. Royal Ins. Co., 337 U.S. 254, 69 S.Ct. 1067, 93 L.Ed. 1347; Baltimore Contractors, Inc., v. Bodinger, 348 U.S. 176, 75 S.Ct. 249, 99 L.Ed. 233.

2. Enelow v. New York Life Ins. Co., 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440; Shanferoke Coal & Supply Corp. of Delaware v. Westchester Service Corp., 293 U.S. 449, 55 S.Ct. 313, 79 L.Ed. 583; Ettelson v. Metropolitan Life Ins. Co., 317 U.S. 188, 63 S.Ct. 163, 87 L.Ed. 176.

3. Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 300, 63 S.Ct. 1070, 87 L.Ed. 1407.

have at times so construed it, though obviously whether that is correct turns upon how far the analogy to a bill, *quia timet*, extends. If it was to be taken as such a bill before November 29, 1955, under the general doctrine applicable to suits in equity, it did not become an action at law on that day by the notice that then made impossible any equitable relief; for ordinarily a suit in equity continues to be such, however the facts may have changed, *pendente lite*, on which the "equity of the bill" depended.[4] We will assume, *arguendo*, that the action would have been a suit in equity, and that it would have remained so after November 29; and, if so, the order would not be appealable, unless it makes a difference that the plaintiff, when the complaint was filed, had already made it certain that no part of the equitable relief prayed would under any circumstances be granted. True, it would still be necessary to determine the plaintiff's rights as a condition of granting damages; but that is always true in an action at law and is irrelevant.[5] It appears to us permissible to hold that in such a situation, since at the very outset it was evident that nothing could be involved but a judgment for damages, the action should be deemed an action at law. We will not therefore so far disregard the actual controversy and cling to its verbal vestment and hold that the order was only a "step" in a suit in equity. We are indeed acutely aware how spectral all this reasoning may appear; but, as we understand the decisions, we cannot escape engaging in it; and we hold that we have jurisdiction over the appeal.

■ The next question is whether § 301(a) of the Labor Management Act[6] gave to the district court any jurisdiction over the claim, for it is not justiciable under the "Diversity Clause." The Supreme Court in Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 348 U.S. 437, 75 S.Ct. 488, 99 L.Ed. 510, held that a district court did not have jurisdiction of the action then at bar in which a union asserted claims in behalf of its employees against their employer. However, in the case at bar, as we have already said, the plaintiff expressly disclaimed any relief on behalf of its employees, so that the action is in no way "representative," but "arises" under a law of the United States. It is true that three justices of the Supreme Court (Frankfurter, Burton and Minton, JJ.), held the precise opposite in the decision just mentioned, but three others (the Chief Justice and Reed and Clark, JJ.), refused to rule on the question, although they concurred in the result, and the remaining two (Black and Douglas, JJ.) dissented. For that reason we held in Signal-Stat Corporation v. Local 475, 2 Cir., 235 F.2d 298, 300, that the court had left the issue open, and we adhered to our earlier decision in Shirley-Herman Co. v. International Hod Carriers etc. Union, 2 Cir., 182 F.2d 806, 17 A.L.R.2d 609, that the section did create such a right. Judge Hincks was in the court that so decided, and Judge Medina and I think that we should accept the decision as a controlling precedent.

■ Coming then to the merits, we are to decide whether the defendant forfeited its right to arbitration of the assessment of damages, which depends upon two letters: one, the plaintiff's to the defendant of August 29, 1955; the other, the defendant's reply of September 12, 1955. The "dispute," as the plaintiff's letter described it, was that, on the one hand, the defendant was "transferring and hiring" employees

---

4. Camp v. Boyd, 229 U.S. 530, 551–552, 33 S.Ct. 785, 57 L.Ed. 1317; McGowan v. Parish, 237 U.S. 285, 295, 296, 35 S.Ct. 543, 59 L.Ed. 955; Harr v. Pioneer Mechanical Corp., 2 Cir., 65 F.2d 332; Rooney v. Weeks, 290 Mass. 18, 194 N.E. 666; Mantell v. International P. H. Co., 141 N.J.Eq. 379, 55 A.2d 250, 259, 173 A.L.R. 1185; Pomeroy's Equity Jurisprudence, Vol. 1, § 237(d).

5. Corcoran v. Royal Development Co., 2 Cir., 121 F.2d 957, 959.

6. § 185, Title 29 U.S.C.A.

who were not "professional within the meaning of section 2(12) of the Labor Management Relations Act of 1947"; and was claiming the right "to transfer and hire employees of a non-professional status"; while, on the other hand, the plaintiff's position was that Articles 1 and 26 of the contract compelled the defendant "to maintain the professional character of the Council which was the basis for the Board's certification." This was an entirely definite and concrete issue of a kind for which arbitration was particularly appropriate. The "Grievance Procedure" of Article 22 was not applicable to it, because, although it did indeed provide for the settlement of "a grievance presented * * * by the Council" which the "Council" "desires to process," the "grievance" had to be that of "an employee or group of employees," and the dispute at bar was that of the plaintiff as an organization. The defendant's reply was an unconditional refusal to arbitrate this dispute; and its excuse was patently untenable. The plaintiff had not asked arbitration of "any specific cases in which you feel the Company has violated" Articles 1 and 26; it had proffered as the issue the defendant's "right unilaterally to transfer and hire employees of a non-professional status." The fact that the evidence would involve "special cases" was irrelevant. The situation was flatly within what we said in Kulukundis Shipping Co., S/A, v. Amtorg Trading Corp., 2 Cir., 126 F.2d 978, 989: "We take that proviso [i. e. that "the applicant for the stay is not in default"] to refer to a party who, when requested, has refused to go to arbitration or who has refused to proceed with the hearing * * *." To this we adhere, and disregard § 1451 of the New York law. The defendant did, therefore, forfeit its right to arbitration of the dispute as to whether it had the right to transfer and hire employees of a "non-professional status."

The second prayer for relief was, indeed, different: it was for a declaration that the defendant might not reduce "the minimum qualifications * * * below those used for employees" when the Board certified the plaintiff on June 13, 1952. However, although literally that was a separate dispute, it was so closely akin to the other that to draw any distinction between the two for the purposes of arbitration would enforce too precise and rigorous a construction of a contract upon a subject-matter that, as all agree, ought to be freed, so far as possible from verbal subtleties. We think, therefore, that by the defendant's letter of September 12 it also forfeited any right to arbitrate the issue whether it had reduced its minimum qualifications below those existing at certification.

■ However, the same is not true as to its liability for damages. The correspondence nowhere suggested that the plaintiff had any such claim; so far as appears, the notion of such a liability arose only after the plaintiff had given the notice that put an end to the contract. Furthermore, although it gave the notice on the 14th, until October 10, it did not intimate that it meant to press such a claim although it knew that the controversy had been in fact narrowed down so that nothing else remained. For these reasons, especially when we remember the favor with which courts have come to regard arbitration, we hold that the defendant's refusal of the plaintiff's demand for arbitration of the meaning of the disputed clauses did not forfeit its right to arbitrate the issues of breach and damages. At the time of its refusal the only apparent stake was about the future conduct of the business; and no one can be sure that, if the defendant had been faced with a claim for damages arising from past conduct, it would have refused arbitration. On the other hand its refusal was in the most absolute terms and on the ground in part that the "dispute" should be submitted to the "grievance procedure." Moreover, after the complaint had been served on October 10th, although the defendant then knew that the plaintiff was claiming damages, at no time did it so much as

intimate that the claim should be arbitrated. Again, when as an alternative to dismissal, it moved under § 3 of Title 9, U.S.C.A., for the stay which that section provided,[7] the supporting affidavit, which was highly discursive on the merits, did not suggest that the claim should go to arbitration, though at that time the contract had only about a month to run, and a declaratory judgment had become *brutum fulmen*. Finally, on November 28, only a few hours before the contract actually expired, it filed a reply affidavit, again without a syllable that the issue of damages should be arbitrated.

In the light of all these facts, it may indeed be argued that we should not allow any part of the "dispute" as to the claim for damages to go to arbitration; but, be that as it may, it is clear that the defendant cannot, even with the widest allowance, have arbitration of other issues than on what occasions the defendant failed to perform its part of the disputed clauses as the court shall construe them, and what damages the plaintiff suffered because of any such breaches.

■ The question remains whether Article 23 of the contract covered "consequential" damages. In Marchant v. Mead-Morrison Mfg. Co., 252 N.Y. 284, at page 290, 169 N.E. 386, at page 388, the New York Court of Appeals by a bare majority decided that the following language did not do so: "any controversy * * * as to the construction of the terms and conditions of this contract, or as to its performance * * * shall be settled by arbitration". That language is so close to the words of Article 23 that we shall not distinguish between the two, and the damages here claimed are certainly "consequential." However persuasive the New York decision may be in its own setting, the majority depended for its interpretation upon the occasion in which the promise was uttered. In the case at bar, though we apply that canon, we ascribe a different purpose to the same words. If the plaintiff succeeds in proving a breach of the contract while it existed, the issue will be whether the plaintiff, a labor union, suffered any loss measurable in money by the fact that the defendant did not exact for its employees the standard of professional attainment that the contract prescribed. That will be a peculiarly appropriate issue to submit to those who are familiar with unions and unionism. Article 23 provides that each party shall choose one member of a "Board" of three from names submitted by the American Arbitration Association; and that, if they cannot agree upon a third member—the "Chairman" —the Association shall choose him. Such a provision was intended to submit to persons, familiar with the subject, the issue whether the union suffered money damages by the injury to its standing, if the professional equipment of its members became impaired.

The order will be modified so as to provide that the court shall try the cause so far as to declare what is the meaning of the disputed clauses of the contract; and shall enter an interlocutory judgment incorporating its conclusions, but referring to arbitration under Article 23 the issues of the defendant's failure to conform to the clauses as interpreted, and the amount of any damages suffered because of such breaches by the plaintiff as distinct from any suffered individually by its members.

7. Signal-Stat Corporation **v.** Local 475, 2 Cir., 235 F.2d 298, 301–302.