ENGINEERS ASSOCIATION, Petitioner,

v.

SPERRY GYROSCOPE COMPANY,
Division of Sperry Rand Corpo-
ration, Respondent.

United States District Court
S. D. New York.

Feb. 5, 1957.

Mayer, Weiner & Mayer, New York City, for petitioner.

Roosevelt & Freidin, New York City, for respondent.

EDELSTEIN, District Judge.

The petitioner, a labor union, seeks to compel the respondent employer to arbitrate a controversy under the terms of an arbitration clause contained in the collective bargaining agreement between the parties. The employer operates a plant in New York and, upon opening a plant in Utah, offered some of the New York employees transfers to Utah. It appears that some of the employees consenting to the transfer were given increases. The collective bargaining agreement, after setting forth salary rates, provides that they may be increased "on a merit basis only", and further recites that merit increases are at the sole discretion of the employer. The employer maintains that the increases involved were merit increases, but the union contends that they were transfer bonuses, not subject to the unilateral action of the employer. The contract provides for the arbitration of "all disputes, differences or grievances arising out of the interpretation or application of the provisions of this Agreement * * *."

■ The jurisdiction of this court is invoked under Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, 29 U.S.C.A. § 185, and Sections 4 and 6 of the United States Arbitration Act, 9 U.S.C. § 1 et seq. The respondent, conceding division of authority among Courts of Appeal, takes the position that the court lacks jurisdiction. However, in this Circuit, at least, it is established that Section 301, which authorizes the bringing of suit in a district court for the violation of a contract between an employer and a labor organization, without regard to the amount in controversy or the citizenship of the parties, created "a generally applicable and uniform federal substantive right" as well as "a remedy * * * and * * * a forum in which to enforce it." Shirley-Herman Co. v. International Hod Carriers, 2 Cir., 182 F.2d 806, 809; Signal-Stat Corporation v. Local 475, etc., 2 Cir., 235 F.2d 298. A number of district courts, including the Southern District of New York, have held that Section 301 itself authorizes decrees of specific performance of arbitration agreements. Textile Workers Union v. American Thread Co., D.C., 113 F.Supp. 137; Wilson Bros. v. Textile Workers Union, D.C., 132 F.Supp. 163; Local 207, Elec., etc., v. Landers, Frary & Clark, D.C., 119 F.Supp. 877; Evening Star Newspaper Co. v. Columbia Typographical Union, D.C., 124 F.Supp. 322; Insurance Agents' International Union v. Prudential Ins. Co., D.C., 122 F.Supp. 869. But see Local 205, etc. v. General Electric Company, 1 Cir., 233 F.2d 85, 96. In any event, inasmuch as federal law is applicable under Section 301, for remedy as well as substance, the United States Arbitration Act may provide the remedy of specific performance.

■■ But "the remedy of an original action for specific performance under § 4 is available only as to an arbitration agreement contained in the

types of contracts defined by § 2 as qualified by § 1." Local 205, etc. v. General Electric Company, supra, 233 F.2d at page 97. Section 2 defines as valid and enforceable "a contract evidencing a transaction involving commerce" to settle a dispute by arbitration. And Section 1 excludes application of the Act to "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." The collective bargaining agreement in this case is a "contract evidencing a transaction involving commerce" within the meaning of Section 2 of the Act. Signal-Stat Corporation v. Local 475, etc., 2 Cir., 235 F.2d 298; Local 205, etc. v. General Electric Company, 1 Cir., 233 F.2d 85; and see Bernhardt v. Polygraphic Co., 350 U.S. 108, 200–201, 76 S.Ct. 273, 100 L.Ed. 199. And the Court of Appeals for the Second Circuit has indicated, in Signal-Stat Corporation v. Local 475, supra, its agreement with the Third Circuit's decision and reasoning in Tenny Engineering, Inc., v. United Electric, Radio & Machine Workers, 207 F.2d 450, that "even assuming a collective bargaining agreement is a 'contract of employment'—the exclusionary clause in Section 1 applies only to 'workers engaged in * * * interstate commerce', i. e., only those actually in the transportation industries." 235 F.2d at page 302. The workers involved in this case are not in a transportation industry. Accordingly, the United States Arbitration Act is properly applicable.

■ Nor is jurisdiction to compel arbitration withdrawn by the Norris-LaGuardia Act, 29 U.S.C. § 101 et seq., 29 U.S.C.A. § 101 et seq. The case of Alcoa S. S. Co. v. McMahon, 2 Cir., 173 F.2d 567, certiorari denied 338 U.S. 821, 70 S.Ct. 65, 94 L.Ed. 498, is inapposite. There it was held that the Norris-La-Guardia Act precluded the issuance of an order compelling a union to carry out the contract of employment, in compliance with a declaratory judgment interpreting the collective labor agreement. The situation in that case giving rise to a demand for an injunction is precisely the type of situation at which the Norris-LaGuardia Act was aimed; an order upon the union would have been a classic labor injunction, "typically an order which prohibits or restricts unilateral coercive conduct of either party to a labor dispute." Local 205, etc., v. General Electric Company, supra, 233 F.2d at page 91. "The general structure, detailed provisions, declared purposes, and legislative history of that statute show it has no application to cases where a mandatory injunction is sought to enforce a contract obligation to submit a controversy to arbitration under an agreement voluntarily made." Textile Workers Union v. American Thread Co., supra, 113 F.Supp. at page 142. On the contrary, a policy of the Norris-LaGuardia Act to foster arbitration of disputes between employers and unions is effectuated by a decree of specific performance of a voluntary arbitration agreement. Wilson Brothers v. Textile Workers Union, supra, 132 F.Supp. at pages 165–166.

Under Section 4 of the Arbitration Act, the court in an action to compel arbitration considers no issues (except for equity considerations) other than (1) the making of an agreement to arbitrate, and (2) the failure, neglect or refusal of the other party to perform that agreement. There is no dispute over the making of the agreement to arbitrate. But the employer denies his liability to arbitrate under that agreement because (1) the demand for arbitration is premature and (2) there is no arbitrable issue.

■ Under the collective labor agreement, a grievance may not come to arbitration until the specified grievance procedure has been carried out. That procedure entails (for an "Association-Employer Grievance" as here involved) a grievance session between the union's grievance committee and the employer's representatives in operations and industrial relations. After that session,

the employer has two weeks in which to notify the union of its decision in writing. In the event that the union does not accept that answer it must, if it desires to arbitrate, notify the employer within two weeks of its intention to submit the issue for arbitration. The union filed a written grievance with the company and the parties met to take up the grievance. But it is alleged that, because only a small number of persons were involved and the situation appeared to be a non-recurring one, the grievance committee and the employer's representatives agreed to settle the issue without going into the substance or merits of the grievance. An "Answer to Grievance No. 42–56" was served on the union, embodying the settlement, but the settlement by the grievance committee was subject to further approval by the union. The union ultimately declined to ratify the settlement, and made a demand for arbitration.

This procedure would seem to be in conformity with the prescribed procedure preliminary to arbitration. However, the employer maintains that there had been an agreement that, should the settlement be rejected, the company had the right to file a new answer directed to the merits, which would be processed through the grievance procedure. The parties did meet on the grievance subsequently, at which time the union agreed to furnish the names of the persons involved and agreed to state in writing the relief it sought. The list of names was submitted, and separately, marked "Addendum II to Grievance No. 42–56", a statement was furnished setting forth the relief sought. There were subsequently a letter from the company to the union seeking clarification of the relief sought and a union reply to that letter. On October 1, 1956, the company filed another "Answer to Grievance No. 42–56". But the petition in this case was verified four days before that answer was filed with the union and was received at the company corporate offices on the same day that the

company's answer was filed at the plant. Consequently, it is argued, at the time this proceeding commenced, the grievance procedure had not yet been completed. Moreover, the employer argues that its right was not merely the formal one of filing an answer, but of having it considered in good faith by the union, which it could not have done, in the circumstances.

The employer's position is essentially that the first "Answer to Grievance No. 42–56" was in fact no answer, by agreement between the parties permitting the employer to substitute a new answer on the merits in the event of union rejection of the settlement. But such an agreement is denied under oath. The fact that the parties did meet subsequently and discuss the merits does not establish that there was an agreement to waive or extend the contract procedure. It is set forth, without contradiction, that at subsequent meetings the employer's representatives addressed themselves to the arbitration demand already served and declared their unwillingness to arbitrate, without reference to a new answer or a new arbitration demand. Moreover, in the letter responding to the company's request for clarification of the relief demanded, the union asked that the company proceed without delay in the selection of an arbitrator. Such a request is inconsistent with the existence of the agreement alleged. In any event, I cannot, on the facts presented in the affidavits, make a finding that there was such an agreement. It is, of course, the ideal function of the grievance procedure in a collective labor agreement to explore the merits of grievances with a view to amicable disposition on the basis of mutually understood facts. But it is hardly alien to the function of a grievance procedure to settle disputes in some other way, as was attempted here. The fact that the substance of the grievance was not aired is no doubt unfortunate, but the grievance machinery of the contract is one of procedure; if the procedure is exhausted, the com-

pany may not be heard to complain that the procedure did not embrace the merits of the complaint. Otherwise, a step would be added to the grievance procedure not specified in the contract. Except for the time limitations which, it is alleged without contradiction, were extended by both sides, the contract procedure was followed and the demand for arbitration was not premature.

The employer's position on the arbitrability of the dispute is that on the basis of prior negotiations and litigation between the parties, it is established that they contracted in view of New York law that only bona fide disputes would be arbitrable. General Electric Co. v. United Electrical Radio & Machine Workers of America, C. I. O., 300 N.Y. 262, 90 N.E.2d 181; Taft v. Sperry Gyroscope Co., Sup., 127 N. Y.S.2d 61. The dispute, it is alleged, actually involves the union's desire to arbitrate a grievance that merit increases had been improperly withheld from certain employees. But inasmuch as that claim is not arbitrable, or even properly the subject of a grievance, under the clause in the contract giving to the company sole discretion in the matter of merit increases, the union instead filed a grievance about the granting of such increases to others (who were leaving the bargaining unit anyway), thereby (1) using the grievance for "propaganda" purposes pursuant to a long standing attempt to alter the sole discretion clause, and (2) hoping to apply pressure on the company in favor of those who had not received merit increases. Accordingly, the company has set forth facts in connection with the granting of the increases to the employees in question, and argues that it is the burden of the union to meet the challenge by persuading the court that there is a bona fide basis for the claim; if the court concludes that the agreement has not been violated there can be no arbitration.

In the General Electric case, supra, 300 N.Y. at page 264, 90 N.E.2d at page 182, the New York law is stated:

"If, under the unambiguous terms of an agreement calling for arbitration, there has been no default, the court may not make an order compelling a party to proceed to arbitration. * * * Whether or not a bona fide dispute exists is a question of law * * *." In that case, under the guise of a claim that the company was violating the anti-discrimination provision of the collective bargaining agreement by failure to afford pension credits for time spent in union activities beyond those hours for which the company had agreed to pay, the union sought arbitration. But the court found that the company was not obliged under the contract to give pension credits for time spent in union activity beyond a maximum number of hours per week, for which the company had agreed to pay, and there was no arbitrable issue, even though the alleged dispute fell within the literal language of the arbitration agreement. And in Taft v. Sperry Gyroscope Co., supra, 127 N.Y.S.2d 61, involving the parties at bar in the instant case, the court found that although the issue for arbitration was ostensibly that the company granted merit increases for reasons other than merit, the real issue, on the basis of the relief demanded, was the arbitration of wage schedules, clearly beyond the arbitral machinery.

These cases are authority for nothing more than the proposition that arbitration may not be compelled on an issue not arbitrable under the contract, and arbitrability may not be conferred by the mere device of a label. The contract between the parties provides that the employer may, at its sole discretion, grant increases "on a merit basis only". The union contests certain increases as not being on a merit basis only, but as being, at least in part, transfer bonuses. The employer insists, with supporting allegations of fact, that the increases were on a merit basis only and not subject to arbitration by being labeled with another name. But the determination of whether the label attached by the union is inaccurate

involves, in this case, a determination of disputed fact, in anticipation of the arbitration itself, and a begging of the entire question. The determination of arbitrability, that is, whether there has been a violation of contract by the company, or a default of arbitration, must be one of law. It must be found that the issue raised is in reality outside the scope of the contract, as appears from a consideration of the true nature of the claim against the terms of the agreement. In prior litigation between the parties, it has been noted that "in appropriate circumstances an arbitrable dispute may exist upon a claim that increases are granted or withheld upon grounds and causes other than merit in violation of the spirit and purpose of the agreement." Taft v. Sperry Gyroscope Co., supra, 127 N.Y.S.2d at page 62. It would appear that the appropriate circumstances exist at this time. The issue sought to be arbitrated is whether the increases given were on a merit basis only and this issue is certainly, in the terms of the contract, a dispute "arising out of the interpretation or application of the provisions" of the agreement. There is a direct challenge that certain increases were not merit increases and the decision of the arbitrator will be that they were or were not, with no implication of extraneous or collateral issues involving the general wage schedule, or the granting or withholding of increases or the amount of any increase. There is no basis as a matter of law for a determination that an extraneous issue is being subjected to arbitration by the application of a label. The union motive for seeking arbitration, if the issue is arbitrable, may not be tried in the judicial forum, no matter how significant it may be in the arena of labor-management relations.

Moreover, it would seem that the employer itself considered the issue to be arbitrable, inasmuch as it participated, apparently without objection, in the processing of the dispute through the grievance machinery. Cf. Signal-Stat Corporation v. Local 475, etc., 2 Cir., 235 F.2d 298. Indeed, in arguing the prematurity of the arbitration demand submitted before the merits of the grievance were explored, the employer insists that the grievance procedure was designed precisely to bring out the kind of facts available in this instance to avoid misunderstanding based upon preconceptions and lack of information. If the dispute is one referable to the grievance machinery, it is not one within the sole discretion of the employer. While not all "grievable" disputes are arbitrable under the contract, this one is, for it involves a difference arising out of the interpretation or application of the provision in the contract authorizing the employer to make increases on a merit basis only.

Accordingly, the application to compel arbitration will be granted.