**Phyllis J. TOWNSEND, Plaintiff,**

v.

**SMITH BARNEY SHEARSON INC. (formerly Shearson Lehman Brothers Inc.), Defendant.**

No. 94–CV–6599L.

United States District Court, W.D. New York.

Nov. 2, 1995.

Phyllis J. Townsend, pro se.

William G. Madigan, Bradstreet, Madigan & Wallace P.C., Bath, NY, for plaintiff.

Kevin B. Leblang, Kramer, Levin, Nessen, Kamin & Frankel, New York City, for defendant.

## DECISION AND ORDER

LARIMER, District Judge.

This is a Title VII case. Plaintiff Phyllis Townsend ("Townsend") alleges that her employer, defendant Smith Barney Shearson ("Smith Barney"), subjected her to a hostile environment, sexual harassment and retaliation because of her sex.

Presently before me is Smith Barney's motion to compel arbitration and to stay this action pending the results of arbitration.[1] Smith Barney asserts that, upon her employment with Smith Barney, Townsend signed two separate contracts containing arbitration provisions that encompass her present claims. Thus, asserts Smith Barney, plaintiff is bound by those provisions and this lawsuit must be stayed pending arbitration. On March 23, 1989, Townsend signed a document entitled "Uniform Application for Securities Industry Registration or Transfer", commonly referred to as a "Form U-4". This document, used throughout the securities industry by virtually every prospective

---

1. Townsend, originally *pro se,* filed two complaints, each alleging different Title VII violations against the same defendant. Smith Barney filed one motion, applicable to both cases, and all subsequent filings by both parties have been identified as applicable to both cases. By this Order, I hereby consolidate the two cases (94–CV–6599 and 94–CV–6600) into one action—94–CV–6599.

broker/dealer employee registering for membership in any securities exchange or other organization, contains the following provision:

I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations with which I register ... Form U–4, p. 4, ¶ 5.

One of the organizations with which Townsend registered was the New York Stock Exchange ("NYSE"). *See* Form U–4, p. 1. According to Smith Barney, Article XI, Section 1 of the NYSE Constitution provides that:

[a]ny controversy between ... a member ... or member organization and any other person arising out of the business of such member .. or member organization ... shall at the instance of any such party be submitted for arbitration in accordance with the provisions of this Constitution and such rules as the Board may from time to time adopt. 2 NYSE Guide (CCH) ¶ 1501 (Smith Barney Brief at 3–4).

The NYSE Rules (Rules 347) requires arbitration of:

[a]ny controversy between a registered representative and any member or member organization arising out of the employment or termination of employment of such registered representative by and with such member or member organization.... *Id.*, at ¶ 2347 (Smith Barney Brief at 3–4).

Smith Barney asserts that Townsend must arbitrate this dispute pursuant to the Form U–4.

In addition, Smith Barney asserts that Townsend is bound by an arbitration provision contained in the Smith Barney employment application signed by Townsend on January 18, 1989. That application states, in pertinent part, as follows: "I hereby agree that any controversy arising out of or in connection with my compensation, employment or termination of employment shall be submitted to arbitration before the National Association of Securities Dealers, Inc., the New York Stock Exchange, Inc. or the American Stock Exchange, Inc. ..."

Townsend opposes Smith Barney's motion. She does not dispute that she signed the Form U–2 (Townsend Aff't at ¶ 3) but she asserts that it is inapplicable to her because she never performed the job responsibilities of a broker. Townsend claims that she was hired as a secretary and remained so until her departure from Smith Barney. As such, Townsend claims the provisions of the Form U–4 are inapplicable to her. Townsend does not address the provision found in the Smith Barney employment application.

## DISCUSSION

■ A court deciding a motion to compel arbitration and to stay proceedings should consider four factors: whether there has been an agreement to arbitrate; the scope of that agreement; whether the federal statutory claims, if any, were intended by Congress to be non-arbitrable; and, if only some of the claims are subject to arbitration, whether to stay the remainder of the proceedings pending arbitration. *Creative Securities Corp. v. Bear Stearns & Co.*, 671 F.Supp. 961, 965 (S.D.N.Y.1987), *aff'd*, 847 F.2d 834 (2d Cir. 1988).

■ The arbitrability of the parties' dispute is for the court, not the arbitrator, to decide at the outset. *AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986). In determining arbitrability, the court must take into account the strong federal policy favoring enforcement of agreements to arbitrate. *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987); *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). This policy is intended to prevent "[c]ontracts to arbitrate [from being] avoided by allowing one party to ignore the contract and resort to the courts." *Southland Corp. v. Keating*, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984).

■ So strong is the policy favoring arbitration that enforcement of the agreement "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation

that covers the asserted dispute." *AT & T,* 475 U.S. at 650, 106 S.Ct. at 1419 (quoting *Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–54, 4 L.Ed.2d 1409 (1960)). Accordingly, any doubts as to arbitrability should be resolved in favor of arbitration. *Id.; Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth,* 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985).

■ The court is not to consider the merits of the underlying controversy in deciding whether it should be submitted to arbitration. *AT & T,* 475 U.S. at 649, 106 S.Ct. at 1418. The only issues at this stage are whether the parties' agreement to arbitrate encompasses the dispute, and if so, whether the law permits arbitration of the dispute. *Mitsubishi,* 473 U.S. at 628, 105 S.Ct. at 3354. If both these questions are answered in the affirmative, the court has no discretion, and must direct the parties to proceed to arbitration. *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 217–18, 105 S.Ct. 1238, 1240–41, 84 L.Ed.2d 158 (1985).

In this case, I find that there are two agreements to arbitrate, both of which encompass Townsend's claims, which claims are fully arbitrable.

■ As noted, Townsend does not dispute that she signed the Form U–4 (or, for that matter, the Smith Barney employment application).[2] Rather, she contends that because of her job duties, she is not subject to the arbitration provisions in the Form U–4. Townsend cites no authority for this proposition. Indeed, I find that the terms of the Form U–4 as well as the case law compel the opposite conclusion.

In addition to the arbitration provision at issue in this case, the Form U–4 signed by Townsend also states as follows:

I hereby apply for registration with the organizations ... indicated ... and, in consideration of such organizations ... receiving and considering my application, I submit myself to the jurisdiction of such ... organizations and hereby certify that I agree to abide by, comply with and adhere to all the provisions, conditions and covenants of the statutes, constitutions, certificates of incorporation, by-laws and rules and regulations of the ... organizations as they are and may be adopted, ... and I agree to comply with, be subject to and abide by all such requirements and all rulings, orders, directives and decisions ... imposed by such states and organizations.... Form U–4, p. 4, ¶ 2.

I find that this provision subjects all Form U–4 signers to the rules and regulations of the various organizations referred to therein **upon the submission of the signed application,** and regardless of whether or not the applicant becomes registered, functions as a broker, or any other measure of advancement. Accordingly, whether or not Townsend advanced in her employment status is irrelevant. She is bound by the Form U–4 arbitration provision, regardless of her job title or duties, upon submission of her signed application.[3]

This is consistent with how other courts have resolved similar cases. *See Cherry v. Wertheim Schroder and Co., Inc.,* 868 F.Supp. 830 (D.S.C.1994) (where broker employee who failed to pass NASD exam and thus never became registered broker was still bound by arbitration provisions in Form U–4); *Meyers v. Prudential–Bache Securities, Inc.,* 1986 WL 4723 (N.D.Ill.1986) (actual duties of broker employee irrelevant to applicability of Form U–4 arbitration provision where by executing Form U–4 employee became a registered representative.)

---

2. Following receipt of Smith Barney's motion, Townsend, on May 5, 1995, requested "true, clear and accurate" copies of the Form U–4 and Smith Barney employment contract. By letter dated May 15, 1995 counsel for Smith Barney provided directly to Townsend cleaner copies of both. Townsend has not since renewed any concerns about the copies nor raised this issue in her opposition papers which were filed on July

11, 1995. Counsel for Smith Barney also provided the improved copies to the Court and I find them fully adequate for the purposes of this motion.

3. There is no dispute in this case that Townsend's signed Form U–4 was submitted and processed through normal channels.

■ Moreover, Townsend's representations concerning her job title and responsibilities are themselves conflicting: it is not clear to me that her duties were limited to secretarial functions only as she alleges in her affidavit dated July 10, 1995. Although Townsend asserts in her affidavit that she "was never hired or employed as a broker, but was in fact employed only as a secretary" (see Aff't at ¶ 9), she represents her job title in the Form U–4 application *and* the Smith Barney employment application as "sales asst." Moreover, in her complaint, Townsend alleges that at one time she was deprived of clerical help—"I had the help of the cashier and Temps in the past," and she also complains that her commissions had been cancelled. Having clerical help and being paid commissions are not typically associated with secretarial positions. Thus, I am not satisfied that Townsend's role as a Smith Barney employee was as limited as she now alleges.[4] I find as fact that Townsend's duties were sales related and not only clerical.

Accordingly, I find that the Form U–4 constitutes a valid agreement to arbitrate all Townsend's present claims, and that Townsend is bound by the arbitration provisions contained therein.

■ Additionally, I find that Townsend is bound by the arbitration provision contained in the Smith Barney employment application. Section 1 of the Arbitration Act (9 U.S.C. § 1 *et seq.*) states that "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." I find that the Smith Barney employment application does not involve "workers engaged in foreign or interstate commerce," and, thus is not exempt from the Arbitration Act.

There is no clear Supreme Court authority on this point. In *Southland Corp. v. Keating,* 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984), the Court discussed the meaning of "commerce" in § 2 of the Act, which makes enforceable any arbitration "provision in any maritime transaction or a contract evidencing a transaction involving commerce ...". The Court held that the limitation of the FAA to contracts "involving commerce" was meant to make the Act applicable in state as well as federal courts. Had Congress intended the Act to apply only in federal courts, the Court reasoned, the "involving commerce" limitation would be "an inexplicable limitation on the power of the federal courts ..." *Id.* at 14–15, 104 S.Ct. at 860–61.

Given the different issues presented in *Southland Corp.,* then, I do not read the Court's holding as affecting the continued validity in this Circuit of earlier Second Circuit cases holding that the § 1 exclusion is limited to workers *literally* involved in commerce. In *Signal–Stat Corp. v. Local 475,* 235 F.2d 298 (2d Cir.1956), *cert. denied,* 354 U.S. 911, 77 S.Ct. 1293, 1 L.Ed.2d 1428 (1957), the court held that "the exclusionary clause in Section 1 applies only to ... those actually in the transportation industries." *Id.* at 302. The court said that the employees in *Signal–Stat,* who worked for a manufacturer of automotive electrical equipment, "[we]re not actually engaged in interstate and foreign commerce," but "[we]re merely engaged in the manufacture of goods for interstate commerce," and that therefore their collective bargaining agreement did not fall w/in the exclusion. *Id.* at 303.

The Court of Appeals reaffirmed this view in *Erving v. Virginia Squires Basketball Club,* 468 F.2d 1064 (2d Cir.1972), stating that § 1 is limited "to employees involved in,

---

**4.** Townsend also suggests in her affidavit that sexual harassment claims are not suitable for resolution by an arbitrator. The law is, however, clearly to the contrary. It is now well established that Title VII claims may properly be ordered to arbitration when they are covered by a valid arbitration agreement. *See Alford v. Dean Witter Reynolds Inc.,* 939 F.2d 229 (5th Cir.1991) (*citing Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991); *DiCrisci v. Lyndon Guaranty Bank of*

*New York,* 807 F.Supp. 947 (W.D.N.Y.1992); *Gateson v. ASLK–Bank, N.V.,* 94 Civ. 5849, 1995 WL 387720 (S.D.N.Y. June 29, 1995). Because the arbitration provisions at issue in this case employ broad language ("any dispute ... that may arise between me and my firm ..." Form U–4; and "any controversy arising out of or in connection with my compensation, employment or termination of employment ..." Smith Barney employment application) I find that Title VII claims are within the scope of these contracts.

or closely related to the actual movement of goods in interstate commerce." *Id.* at 1069. The court held that a professional basketball player "clearly [wa]s not involved in the transportation industry" and therefore affirmed an order staying the player's action to rescind his contract pending arbitration. The court said that "[i]n light of the strong national policy in favor of arbitration as a means of settling private disputes we see no reason to give an expansive interpretation to the exclusionary language of Section 1 by reexamining our decision in *Signal–Stat ...*" *Id.*

An analysis of the Act also supports the conclusion that § 1 refers to actual interstate commerce. The reference to "workers engaged in foreign or interstate commerce" in § 1 would be surplusage if it were simply coextensive with Congress's powers under the commerce clause. Under *Southland Corp.,* § 2 gives the Act as a whole the same reach as Congress's commerce clause power. Therefore, if Congress had wanted to excluded *all* employment contracts from the Act, it could simply have said "employment contracts" and left it at that. Any workers beyond the reach of the commerce clause would not be covered by the Act in the first place. The language of § 1 also reinforces this view; the reference to "seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce," suggests that Congress intended to refer to workers engaged in commerce *in the same way* that seamen and railroad workers are.

Finally, although the Second Circuit has called the legislative history of § 1 "at best, vague and inconclusive," *Signal–Stat,* 235 F.2d at 302, the court said that the exclusion "apparently was inserted at the request of the Seamen's Union, which felt that disputes involving the contracts of seamen came within the admiralty jurisdiction and should not be subject to arbitration." *Id.; but see Willis v. Dean Witter Reynolds,* 948 F.2d 305, 311 (6th Cir.1991) (quoting statement of chairman of ABA committee responsible for drafting the bill that the bill "is not intended [to] be an act referring labor disputes, at all"). This suggests that the exclusion may have arisen from some relatively narrow concerns over certain classes of workers, rather than broad concerns over employment contracts generally.

I have previously determined that employment contracts such as this one—between a brokerage firm and a prospective broker—are not exempt from arbitration pursuant to § 1 of the Arbitration Act, 9 U.S.C. *See DiCrisci, supra,* at 952–53.

Accordingly, I find that the Smith Barney employment application is not exempt from the provisions of the Arbitration Act. Thus, the Smith Barney employment agreement constitutes a valid agreement to arbitrate Townsend's claims, and Townsend is bound by the agreement.

### CONCLUSION

Accordingly, I hereby GRANT Smith Barney's motion to compel arbitration and to stay (docket # 6). The parties are directed to submit their dispute to arbitration in accordance with the terms of the Form U–4 and the Smith Barney employment application. All further proceedings in this litigation are stayed pending completion of arbitration.

IT IS SO ORDERED.