INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, AFL–CIO, Petitioner-Appellant,

v.

NEW YORK SHIPPING ASSOCIATION, Inc., on behalf of its members, Respondent-Appellee.

No. 120, Docket 32563.

United States Court of Appeals Second Circuit.

Argued Oct. 7, 1968.

Decided Nov. 18, 1968.

Seymour M. Waldman, New York City (Waldman & Waldman, Louis Waldman, New York City, on the brief), for petitioner-appellant.

Constantine P. Lambos, New York City (Lorenz, Finn & Giardino, James A. Flynn, New York City, on the brief), for respondent-appellee.

Before FRIENDLY, ANDERSON and FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

Petitioner International Longshoremen's Association, AFL–CIO ("the Union") appeals from an order of the United States District Court for the Southern District of New York, Edward C. McLean, J., denying the Union's petition to compel arbitration of a dispute between it and the New York Shipping Association, Inc. The apparent basis for the district court order was that there was no arbitrable dispute. Because we disagree with that conclusion, we reverse.

The Union and the Shipping Association are parties to a collective bargaining agreement covering the employment of longshoremen in the Port of New York. The agreement was entered into in April 1965, although its terms were effective as of October 1, 1964. It requires, *inter alia*, an increase in employer contributions to a joint Medical and Clinical Services Fund, which furnishes such services to covered employees at four separate medical centers in Manhattan, Brooklyn, Hoboken and Newark. The agreement also provides for a review in October 1967 of "the question of Medical and Clinical Services income," and states that if such income has fallen, the Union may raise the issue of additional employer contributions. If the parties cannot agree, arbitration is called for.

In November 1967, claiming "there is insufficient income to the [Manhattan] Medical Center * * * for its proper operation," the Union invoked the agreement and requested negotiations to increase employer contributions to the Manhattan Medical Center. In reply, the Shipping Association denied that it had any obligation to negotiate on an increase in employer contributions because the income to the Fund had "not fallen below the measuring period." It suggested, however, that surplus moneys allocated to the three medical centers outside of Manhattan might be made available to the Manhattan Center. Further discussions ensued, but they were inconclusive.

In May 1968, the Union petitioned the district court to appoint an arbitrator to decide:

(1) Whether the Medical and Clinical Services income has fallen substantially below the level existing as of the

effective date of the collective bargaining agreements; and

(2) In the event it is determined that such income has fallen substantially below said level, the amount of additional employer contributions needed to bring said income to the level existing as of that time * * *.

The parties appear to agree that under the applicable agreement this procedure was proper,[1] if the dispute was arbitrable. As to that, however, there is sharp disagreement. Judge McLean denied the petition because he concluded that fund income had not fallen and, therefore, the event that entitled the Union to raise the question of additional employer contributions had not occurred. The Union argues to us that the court thus decided the first of the issues to be arbitrated, which is impermissible under the *Steelworkers* trilogy.[2] The Shipping Association contends that the court correctly decided the issue of arbitrability, relying on Strauss v. Silvercup Bakers, Inc., 353 F.2d 555 (2d Cir. 1965). The case thus poses the familiar question whether a court has improperly decided the merits of a controversy rather than its arbitrability.

■■■ It is, of course, true, as the Association vigorously urges, that no one can be compelled to arbitrate a dispute if he has not agreed to do so. As Mr. Justice Brennan put it in United Steelworkers v. American Mfg. Co., 363 U.S. 564, 570–571, 80 S.Ct. 1343, 1363, 1364, 4 L.Ed.2d 1403 (1960) (concurring opinion):

To be sure, since arbitration is a creature of contract, a court must always inquire, when a party seeks to invoke its aid to force a reluctant party to the arbitration table, whether the parties have agreed to arbitrate the particular dispute. In this sense, the question of whether a dispute is "arbitrable" is inescapably for the court.

But the trilogy also instructs us in United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582–583, 80 S. Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960), that:

An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.

This is a substantial hurdle for one opposing arbitration to clear.

The language we are called upon to construe is as follows:

(d) *Medical and Clinical Services Fund Income Review.*

Effective October 1, 1967, the parties shall review the question of Medical and Clinical Services income. In the event that such income has fallen substantially below the level existing as of the effective date of the collective bargaining agreements, then the Union may raise the question of the need for additional employer contributions to bring said income to the level existing as of that time. In the event that the parties are unable to agree, the matter shall be referred to arbitration as provided in the Medical and Clinical Services Trust Agreement.

It should be noted immediately that the particular arbitration clause at issue is not the usual one, possibly because it is part of a memorandum of agreement which is itself incorporated into an over-

1. The procedure called for is that "in the Medical and Clinical Services Trust Agreement." According to the record, that agreement allows either party, under the conditions there set forth, to "petition the District Court of the United States for the Southern District of New York to appoint an impartial umpire."

2. United Steelworkers v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed. 2d 1403 (1960); United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

all collective bargaining agreement containing a more familiar, extensive arbitration clause.[3] The clause quoted above provides that if "the parties are unable to agree, the matter" shall be sent to arbitration. The Association tells us that "the matter" to be arbitrated is only "the question of the need for additional employer contributions," and that the parties do not reach that point unless there has been a substantial drop in fund income which allows the Union to "raise" that "question." This reasoning was implicit in Judge McLean's decision, which held that a diminution of fund income was

> the event which, under the agreement, was to entitle the union to "raise the question" and to arbitrate in case negotiations were unsuccessful * * *.

Since that "event" had not occurred, the judge concluded that there was "no agreement to arbitrate the question of additional employer contributions to the fund."

The Union argues that the language bears another interpretation; i. e., the "matter" to be arbitrated, if the parties fail to agree, includes the entire preceding sentence in the agreement, not just the last portion thereof. In other words, the Union claims that the "matter" includes whether there has been a drop in Medical and Clinical Services income as well as the question of the need for additional employer contributions, and if the parties disagree as to the former, as well as the latter, arbitration of both issues may be compelled.

█ While the issue is not a simple one, we believe that the Union has the better of the argument on arbitrability. The key terms, e. g., "matter," "unable to agree" (as to what?), are general, unrestricted words and more careful

draftsmanship could doubtless have made them more precise. But they occur in the context of a single paragraph devoted to "Medical and Clinical Services Fund Income Review," which mandates a review of the "question" of fund income three years after the beginning of the contract term and ends by a reference to arbitration. While we do not suggest that the Union's construction is the more obvious one, it is certainly not unreasonable. In any event, we cannot say "with positive assurance that the arbitration clause is not susceptible of an interpretation" that disputes as to level of income are arbitrable. See Warrior & Gulf, 363 U.S. at 582–583, 80 S.Ct. at 1353. We are told that whatever doubts we may have as to the correctness of the Union construction "should be resolved in favor of coverage." Id. Doing so, we are compelled to reverse. Cf. IUE v. General Elec. Co., 332 F.2d 485, 488–490 (2d Cir.), cert. denied, 379 U.S. 928, 85 S.Ct. 324, 13 L.Ed.2d 341 (1964). We have considered Strauss v. Silvercup Bakers, Inc., supra, but that case is distinguishable. In *Strauss*, the agreement contained a specific provision withdrawing certain issues from arbitration. There is no such provision here. Cf. United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 584–585, 80 S.Ct. 1347 (1960).

We are thus not called upon to resolve whether fund income had fallen and the subsidiary issues this question raises, e. g., whether fund income is measured as a whole, or separately by Medical Center,[4] whether the base measuring period is the year preceding October 1, 1964, or the year commencing on that date, whether a fall in income is to be measured on the basis of a full year, or by some lesser period.[5] Similarly, we do not reach the Union's alternative argu-

---

3. The memorandum of agreement is Annex B of the General Cargo Agreement of the parties and is made a part thereof.

4. The Union claims that employer contributions have always been proportionately allocated to each of the four Cen-

ters in accordance with the work performed in that geographical area, and that, therefore, income diminution should be measured as to each Center.

5. Judge McLean did not deal with this last possibility, which was raised before him only tangentially.

ment that since the memorandum of agreement is itself part of the overall collective bargaining agreement,[6] the standard arbitration clause in that contract would, in any event, require arbitration.

Judgment reversed for further proceedings consistent with this opinion.