PARAMOUNT BAG MANUFACTURING CO., INC., Petitioner,

v.

RUBBERIZED NOVELTY AND PLASTIC FABRIC WORKERS' UNION, LOCAL 98, I. L. G. W. U., Respondent.

No. 72 C 1008.

United States District Court,
E. D. New York.

Feb. 6, 1973.

Shea, Gould, Climenko & Kramer by
Peter P. Smith, III, New York City

(William A. Shea, New York City, of counsel), for petitioner.

Lieberman, Aronson & Rosenberg by Irwin Bluestein, New York City, for respondent.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

On July 25, 1972, petitioner, Paramount Bag Manufacturing Co., Inc. ("Paramount"), filed its petition in the Supreme Court, Kings County, for an order staying arbitration of a labor dispute which had been demanded on June 7, 1972 by respondent Rubberized Novelty and Plastic Fabric Workers' Union, Local 98, I.L.G.W.U. ("the union"). Paramount obtained a temporary restraining order staying arbitration pending a hearing on its application for a preliminary injunction. Prior to that hearing the union removed the proceeding to this court. Thereafter the union moved for summary judgment, asserting that as a matter of law Paramount's petition to stay arbitration should be denied and dismissed. Paramount thereupon cross-moved (1) to remand the proceeding to the State court or (2) alternatively, for summary judgment granting the relief sought in its petition. For the reasons which follow the union's motion is granted and Paramount's cross-motion is denied in all respects.

It appears from the removal petition and exhibits thereto in the State court, as well as the parties' affidavits on these motions, that the following material facts are not in dispute. Paramount, with its place of business in Brooklyn, New York, is presently engaged in the warehousing and distribution of plastic shoe bags and related products. At one time Paramount engaged in the manufacturing of such items, but in 1957, due to operating losses, it began to purchase such products from other manufacturers and sell them to its clientele. By March 1972 Paramount had completely terminated its manufacturing operations and confined itself solely to warehousing and wholesaling of the products it purchases from suppliers who do not manufacture them specifically or specially for Paramount.

The union is a labor organization representing over 5,000 employees in the soft plastics material industry in and about New York City. It has a collective bargaining relationship with the Plastic Soft Materials Manufacturers' Association, Inc. ("Association"), a group of about 85 employers. Paramount has been a member of the Association since 1964, and consequently has been bound by successive collective labor agreements entered into between the union and the Association. Two agreements are here in question, one dated March 3, 1969, covering the period to February 29, 1972, the other dated March 14, 1972, covering the period to February 28, 1975.

The union's demand for arbitration, which provoked this proceeding, relates to Paramount's termination of manufacturing operations covered by the foregoing agreements while continuing to deal in plastic shoe bags. As expressed in the union's letter to the arbitrator, the gist of its complaint is that in violation of the agreements, "the firm has obtained its products from other concerns and at the same time has laid off and failed to supply with work its employees covered by said agreements." That claim is premised on paragraph 26 in both agreements, which provides:

"No member of the Association shall permit any work to be performed for it, directly or indirectly, outside of its own shop by any other concern, and no member of the Association shall purchase any of its products from any other concern, unless the workers of the inside shop of the member of the Association are fully supplied with work."

The foregoing labor agreements also contain identical provisions for the arbitration of "[a]ny and all disputes, complaints, controversies, claims and grievances whatsoever . . . arising un-

der, out of or in connection with, or in any manner related to this agreement, including . . . any claim arising out of any alleged dissolution or termination of the business of any member of the Association prior to the expiration of the term of this agreement. . . ." [1]

Despite its admitted membership in the Association and the existence of the labor agreements containing the provisions above quoted, Paramount nonetheless insists that the court lacks jurisdiction to entertain this proceeding. Basically, Paramount contends the action is not one for "violation of a contract" between an employer and a labor organization within the meaning of Section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), and must therefore be remanded to the State court. In view of the challenge to the court's jurisdiction that question must be considered first.

### Motion to Remand

In urging remand, Paramount contends that an action between an employer and a labor organization can only be removed from a State court if it is a suit for a "violation" of a contract between the parties. The legislative history of Section 301, it argues, manifests a congressional intent to provide a federal forum simply "for the *enforcement* of collective bargaining agreements affecting interstate commerce." This proceed-

ing, says Paramount, is not a suit to *"enforce"* a collective bargaining agreement but rather one to negate it in respect of the claims asserted by the union. Thus, it argues, paragraph 26 of the agreements is a "hot cargo" clause made unlawful by the National Labor Relations Act and therefore the union cannot legally demand arbitration of the claimed violation of that provision. Additionally, Paramount asserts it entered into the 1972 agreement only because it was fraudulently induced to do so by union representations that paragraph 26 would not be enforced against it.

Paramount's arguments are disingenuous to say the least and plainly confuse the issue of jurisdiction with issues going to the merits. If this court has original jurisdiction under Section 301 to entertain a suit by a union to compel arbitration where the issue is whether or not a contract exists, Procter & Gamble Independent Union v. Procter & Gamble Mfg. Co., 312 F.2d 181 (2 Cir. 1962), cert. denied 374 U.S. 830, 83 S.Ct. 1872, 10 L.Ed.2d 1053 (1963), or an action by an employer resisting arbitration on the ground that an existing union contract did not cover the particular controversy, Black-Clawson Co., Inc. v. International Ass'n of Mach., 313 F. 2d 179 (2 Cir. 1962), then assuredly this court has removal jurisdiction to entertain such a proceeding as this. And it has been so held. Application of Contes-

---

1. Paragraph 38(a) of the agreements reads in full:

"Any and all disputes, complaints, controversies, claims and grievances whatsoever between the Association or any of its members and the Union or any of the workers covered by this agreement, arising under, out of or in connection with, or in any manner related to this agreement, including, but without limitation, any claim arising out of any alleged dissolution or termination of the business of any member of the Association prior to the expiration of the term of this agreement, shall be taken up for settlement and adjustment by representatives of the Union and the Association. Should any such matter not be fully adjusted as aforesaid, it shall be submitted to the Labor Board hereinafter referred to. Should the Labor Board fail to agree or fully adjust the matter, or at the request of either party without submission of the matter to the Labor Board, the matter shall be submitted to arbitration before the Impartial Chairman hereinafter named, or designated as hereinafter provided, as Arbitrator, whose award shall be final and binding. In addition to granting such other relief as he may deem proper, the award of the Impartial Chairman may contain provisions directing or restraining acts and conduct of the parties. Any such award may be enforced by appropriate proceedings in law or in equity."

sa Lingerie, Inc., 227 F.Supp. 37, 39 (S. D.N.Y.1964).[2]

As a final thrust on the jurisdictional issue, Paramount asserts that all the cases previously cited have in effect been overruled by what the Supreme Court said about Section 301 in Boys Markets, Inc. v. Retail Clerk's Union, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970). In *Boys Markets*, however, as Paramount's quotation from that opinion shows, the Supreme Court merely reiterated what it had said in 1962— prior to the decisions Paramount would now avoid—regarding the congressional purpose embodied in Section 301(a). Referring to its prior decision in Charles Dowd Box Co., Inc. v. Courtney, 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962), the Court reaffirmed what it had said in *Dowd, i. e.,* "that the purpose of conferring jurisdiction upon the federal district courts [by § 301] was not to displace, but to supplement, the thoroughly considered jurisdiction of the courts of the various States over contracts made by labor organizations." See 368 U.S. at 511, 82 S.Ct. at 525.

■ *Boys Markets* recognized that the Court's prior decisions in the *Sinclair* and *Avco* cases [3] had frustrated the congressional purpose by in effect ousting State courts of their jurisdiction to issue injunctions in labor matters. This court is unable to discover the slightest intimation in *Boys Markets* to support Paramount's fear that a "failure to remand here . . . would effect the 'wholesale dislocation in the allocation of judicial business between the State and Federal Courts' warned against by the Supreme Court in *Boys Markets.*" No State court remedy is being displaced by this removal. If there is a valid arbitration agreement covering the dispute in question both the State and federal courts would be under a duty to send the matter to the arbitrator. If the dispute is not arbitrable then this court, like the State court, can deny the union that relief.

■ Paramount's further arguments in this vein deserve quick disposition. Assuming that the alleged fraud issues impeaching the validity of the arbitration agreement are of "the usual garden variety", as Paramount puts it, and not "difficult issues requiring the application of Federal labor policy", this court constantly deals with questions of State common law in many contexts just as the State courts do. As *Boys Markets* points out, Section 301 was "the very provision that Congress clearly intended to provide *additional* remedies for breach of collective-bargaining agreements" (emphasis supplied)—a clear indication that the doors of a federal court were to be opened, not shut, when litigants in labor matters approached. Finally, a major contention of Paramount in this case is that the very provision upon which the union bases its claim is violative of the National Labor Relations Act. It is difficult to conceive of an issue more appropriate for consideration by this court.

Since it is not denied that the employers, including Paramount, with whom the collective labor agreement was made, are engaged in an industry affecting commerce under § 301(a),[4] jurisdiction

2. See also Monroe Sander Corp. v. Livingston, 262 F.Supp. 129, 131 (S.D.N.Y. 1966), modified 377 F.2d 6 (2 Cir. 1967) (original action) ; La Salle & Koch Co. v. Doyle, 261 F.Supp. 752 (N.D.Ohio 1966) (removal action) ; A. Seltzer Co., Inc. v. Livingston, 253 F.Supp. 509, 513–514 (S.D.N.Y.), aff'd 361 F.2d 218 (2 Cir. 1966) (original action) ; Todd Shipyards Corp. v. Industrial Union of Marine and Shipbuilding Workers of America, Local 39, AFL–CIO, 232 F.Supp. 589, 591–592 (E.D.N.Y.1964) (original action).

Kayser Roth Hosiery Co., Inc. v. Textile Workers Union, 285 F.Supp. 484 (D. Tenn.1968), the one case Paramount cites in support of its position, is not a holding to the contrary.

3. Sinclair Refining Co. v. Atkinson, 370 U.S. 195, 82 S.Ct. 1328, 8 L.Ed.2d 440 (1962) ; Avco Corp. v. Aero Lodge 735, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968).

4. Paramount's affidavits do not challenge the union's allegations that the employer

is present under § 301(a), the removal is valid, and the motion to remand must be denied.

### Motions for Summary Judgment

The parties' respective motions present but a narrow issue: does the union have a clear legal right to insist upon arbitration of its alleged dispute with Paramount? That dispute plainly involves a claim that Paramount violated collective bargaining agreements to which it was bound as a member of the Association. Those agreements unquestionably provide for arbitration in the broadest of terms, n. 1 *supra*. "There is nothing to limit the sweep of [their] language or to except any dispute or class of disputes from arbitration." International Union of Operating Engineers, Local 150, AFL-CIO v. Flair Builders, Inc., 406 U.S. 487, 491, 92 S. Ct. 1710, 1712, 32 L.Ed.2d 248 (1972). Indeed, the agreements emphasize that the parties eschew all remedies for their disputes save arbitration by providing:

(d) It is agreed that the machinery provided herein, for the settlement of all disputes, claims, controversies, complaints and grievances arising under, out of or in connection with, or in any manner related to this agreement, shall be the exclusive means for the determination thereof, and that neither the Association or any of its members, nor the Union or any of the workers covered by this agreement, shall institute any action or proceeding against the other in any court of law or equity, state or federal, other than respecting enforcement of an arbitrator's award rendered hereunder. This provision shall be a bona fide defense in any action or proceeding instituted contrary to this agreement.

▆▆ Despite the foregoing, it is still "the responsibility of a court to de-

termine whether a union and employer have agreed to arbitration. That issue, as well as the scope of the arbitration clause, remains a matter for judicial decision." Operating Engineers v. Flair, *supra*, at 491, 92 S.Ct. at 1713. But here, as the union contends, it is beyond argument that arbitration agreements do in fact exist and the issues of whether Paramount committed the acts complained of—which indeed are admitted —and whether such acts constitute violations of the collective bargaining agreements fall well within the scope of the arbitration provisions. In these circumstances the court's duty is clear: once it "finds that, as here, the parties are subject to an agreement to arbitrate, and that agreement extends to 'any difference' between them," Operating Engineers v. Flair, *supra*, it must remit the parties to arbitration. It is not for the court to determine

[w]hether the moving party is right or wrong. . . .

\* \* \* \* \* \*

The courts . . . have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious.

United Steel Workers of America v. American Manufacturing Co., 363 U.S. 564, 568, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960).

In nonetheless resisting arbitration, Paramount contends there really is no enforceable agreement between the parties to arbitrate the particular dispute the union has raised. As previously noted, the union is complaining that Paramount is purchasing from other con-

---

members of the Association are engaged in an industry affecting commerce as defined in the Labor Management Relations Act, 1947, as amended; that they annually purchase goods from outside the State of New York aggregating millions

of dollars and sell and ship goods to customers located outside the State totaling millions of dollars; and that Paramount itself purchases and sells goods in substantial quanties in such interstate commerce. Removal Petition, par. 8.

cerns the products it sells while laying off its union employees and failing to supply them with work. This the union regards as a breach of Paramount's obligations under paragraph 26 of the labor agreements, *supra*, p. 1133.

Paramount disputes the union's right to arbitrate on two grounds: (1) the aforesaid paragraph 26 is void and unenforceable as an unlawful "hot cargo" clause violative of Section 8(e) of the National Labor Relations Act, 29 U. S.C. § 158(e); and (2) the union procured Paramount's renewal of the 1972–1975 labor agreement by falsely representing it would not enforce paragraph 26 as against Paramount.[5] Paramount adds that the union has also indicated it is doing so only to keep other Association employers from discontinuing their manufacture of the products involved as Paramount had done. The union has filed an answer denying these allegations but Paramount argues they present legal defenses which effectively bar the arbitration demanded.

 Paramount has cited no authority holding or even suggesting that a clause like paragraph 26 in the labor agreements here involved is a "hot cargo" clause which is void and unenforceable as an unfair labor practice condemned by Section 8(e). Certainly nothing said in McLeod v. Amer. Fed. of Television & Radio Artists, 234 F.Supp. 832 (S.D.N.Y.1964), affd. 351 F.2d 310 (2 Cir. 1965), should prompt such a conclusion. Granted that a court should not enforce an illegal agreement even by way of permitting an arbitration, as *McLeod* suggests, such an agreement ought to at least appear to be so before a court disregards the national labor policy of encouraging resort to arbitration in labor matters. See *Boys Markets, supra*, 398 U.S. at 241, 90 S.Ct. 1583, and Carey v. General Electric

Company, 315 F.2d 499, 509 (2 Cir. 1963). *Carey*, unlike *McLeod*, which dealt with proceedings like those here, is more instructive on the point at issue. It teaches that the court should not divert the parties from arbitration because of "fear of possible conflict" with the National Labor Relations Board's jurisdiction.

Furthermore, and without trenching upon the as yet unexercised jurisdiction of the arbitrator, the authorities cited by the union strongly suggest that paragraph 26 is not a "hot cargo" clause at all. In National Woodwork Manufacturers Association v. N.L.R.B., 386 U.S. 612, 87 S.Ct. 1250, 18 L.Ed.2d 357 (1967), Section 8(e) was held not to "prohibit agreements made and maintained" on behalf of employees "to pressure their employer to preserve for themselves work traditionally done by them." *Id.* at 635, 87 S.Ct. at 1263. The Court noted that in its earlier decision in Fibreboard Paper Products Corp. v. N.L.R.B., 379 U.S. 203, 85 S.Ct. 398, 13 L.Ed.2d, 233 (1964), it had implicitly recognized "the legitimacy of work preservation clauses" and had "held that bargaining on the subject was made mandatory by § 8(a)(5)." *Id.* 386 U.S. at 642, 87 S.Ct. at 1267. Thus, paragraph 26 here could well be viewed as an entirely lawful work preservation clause.

Paramount's contention that the holding in *National Woodwork, supra*, was limited to a situation where the employer had not "altered its basic operation" simply illustrates the need for exploration of factual issues by a well-informed and experienced arbitrator familiar with the industry, as has been designated in the agreements. Apposite here are Judge Kaufman's comments in *Carey, supra*, in overruling the district court's decision to deny arbitration of alleged grievances said to compel the commis-

---

5. It should be noted that the fraud allegations do not relate to the 1969–1972 agreement, and the union might still be entitled to seek redress for its violation by arbitration. See Operating Engineers v. Flair Builders, Inc., 406 U.S. 487, 92 S.

Ct. 1710, 32 L.Ed.2d 248 (1972), *supra;* United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960) ; and Necchi v. Necchi Sewing Machine Sales Corp., 348 F.2d 693 (2 Cir. 1965).

sion of an unfair labor practice, 315 F. 2d at 512:

> We hold that the withdrawal of this grievance from arbitration was premature, and that it, along with all other grievances brought before us on this appeal, must be submitted to arbitration.

> \* \* \* \* \* \*

> Only if none of these approaches is adopted by the arbitrator would it become necessary to determine whether a court should enforce an award that clearly compels an unfair labor practice. To do so now would be to "raise an unfair labor practice question prematurely and gratuitously." Wollett, "The Interpretation of Collective Bargaining Agreements: Who Should Have Primary Jurisdiction?", 10 Lab.L.J. 477, 482 (1959) (suggesting that even the Board should stay its hand until the arbitrator has given an authoritative interpretation of the contract).

■ As pointed out in *Carey, supra,* this court cannot assume "that the arbitrator is ignorant or oblivious of the pronouncements of the [National Labor Relations] Board and the courts," 315 F.2d at 512, or that he will find the union's claimed grievance warranted.[6] Paramount's claims of manufacturing losses and changed conditions in the industry are grist for the arbitration mill. They are not reasons for a court to conclude *a priori* that a work preservation clause lawful at its inception becomes unlawful when it may be most needed.

■ Equally without merit is Paramount's contention that the 1972–1975 agreement is vitiated by such fraud as to nullify the union's right to arbitration. The "fraud" asserted may well be viewed as nothing more than an alleged parol agreement by the union not to enforce paragraph 26 as against Paramount. Although Paramount claims it renewed the entire labor agreement for 1972–1975 on the strength of that alleged oral representation, federal law recognizes "a distinction between the entire contract between the parties and the arbitration clause. While it is true that fraud or illegality in the inducement of the arbitration clause *itself* is a defense to enforcement of arbitration, the illegality, fraudulent inducement, or repudiation of the principal contract does *not* operate to nullify an agreement to arbitrate." Hamilton Life Ins. Co. of New York v. Republic National Life ins. Co., 408 F.2d 606, 610 (2 Cir. 1969) (emphasis in original).

■ Claims of fraud in the inducement of a contract are typically left to the arbitrator to decide where, as here, the arbitration clause is broad enough to encompass such claims. Erving v. The Virginia Squires Basketball Club, 468 F.2d 1064 (2 Cir. 1972). See also Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 399–400, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); Robert Lawrence Co. v. Devonshire Fabrics, Inc., 271 F.2d 402 (2 Cir. 1959), cert. granted 362 U.S. 909, 80 S.Ct. 682, 4 L.Ed.2d 618 dismissed 364 U.S. 801, 81 S.Ct. 27, 5 L. Ed.2d 37 (1960).

■ The foregoing authority cannot be distinguished, as Paramount attempts, as germane only to cases to which the Federal Arbitration Act

6. Indeed the labor agreements expressly mandate compliance with the National Labor Relations Act and other laws in the following terms:

"43. If any provision of this agreement shall, at any time during the terms thereof, conflict with the Labor Management Relations Act, 1947, as amended, then such provision shall be deemd modified to continue in effect to the extent (most favorable to the Union) permitted by the applicable law. However, if at any time thereafter such provision shall no longer conflict with the law, then it shall be deemed restored to the agreement with the same force and effect as if it had never been in conflict with the law.

"44. It is agreed that if any provision of this agreement, or the application thereof, shall be held invalid, the remainder of this agreement, or the application. thereof, shall not be affected thereby."

(Act), 9 U.S.C. § 1 et seq., applies. There is nothing in that Act, and particularly in § 1 thereof, which requires different treatment for labor agreements than for commercial or other agreements providing for arbitration of disputes. There can be no question that the union here, if it chose, could have invoked the summary procedures of the Act to test out its right to arbitration instead of by complaint under § 301 of the Labor Management Relations Act. International Ass'n of Mach. & Aerospace Workers v. General Electric Co., 406 F.2d 1046, 1049 (2 Cir. 1969). Furthermore, as the foregoing case points out, "the Arbitration Act ordinarily does apply to suits upon collective bargaining agreements" unless the employees are actually engaged in the transportation industries. *Id.*, citing Signal-State Corp. v. Local 475, United Electrical Workers, 235 F.2d 298 (2 Cir. 1956), cert. denied 354 U.S. 911, 77 S.Ct. 1293, 1 L.Ed.2d 1428 (1957).

Regardless of the form in which the issues reach a federal court, the same basic criteria apply; *i.e.*, have the parties entered into an arbitration agreement and, if so, does it cover the particular dispute? Moreover, in the case of labor agreements, we are taught

. . . that it is "national policy" to encourage arbitration of labor disputes, that doubts as to arbitrability should be "resolved in favor of coverage," that language excluding certain disputes from arbitration must be "clear and unambiguous" or "unmistakably clear," and that arbitration should be ordered "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."

International Ass'n of Mach. & Aerospace Workers, *supra,* 406 F.2d at 1048. Here, the court is satisfied that no genuine triable issue of material fact has been raised which bars summary judgment sustaining the union's right to arbitrate the dispute in question.

Accordingly, petitioner Paramount's motion to remand and for summary judgment is in all respects denied and summary judgment is directed in favor of respondent union denying and dismissing Paramount's petition to stay arbitration.

The foregoing constitutes the findings of fact and conclusions of law of the court for purposes of Rule 52, F.R.Civ.P.

So ordered.